### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| JACQUELINE LARRAGA, | CASE NO. 1:24-CV-02137-BMB |
| Plaintiff, | JUDGE BRIDGET M. BRENNAN |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| COMMISSIONER OF SOCIAL SECURITY, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

#### INTRODUCTION

Plaintiff Jacqueline Larraga challenges the Commissioner of Social Security's decision denying supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry dated Dec. 10, 2024). For the reasons below, I recommend the District Court **AFFIRM** the Commissioner's decision.

#### PROCEDURAL BACKGROUND

Ms. Larraga applied for SSI on October 19, 2020, alleging she became disabled on November 2, 2007 due to bipolar disorder, schizophrenia, post-traumatic stress disorder (PTSD), depression, and anxiety. (Tr. 124). After the claim was denied initially and on reconsideration, Ms. Larraga requested a hearing before an ALJ. (Tr. 168, 177, 184). On October 16, 2022, Ms. Larraga (represented by counsel) and a vocational expert (VE) testified before the ALJ. (Tr. 72-98). On November 7, 2022, the ALJ determined Ms. Larraga was not disabled. (Tr. 139). On September

1

21, 2023, the Appeals Council reversed the ALJ and remanded for further proceedings. (Tr. 163-64).

In a new hearing held in 2024, Ms. Larraga (represented by the same counsel) and a new VE testified before the ALJ. (Tr. 50-71). Once again, the ALJ determined Ms. Larraga was not disabled, and the Appeals Council denied Ms. Larraga's request for review, making the second hearing decision the final decision of the Commissioner. (Tr. 1-3, 12-40; *see also* 20 C.F.R. § 416.1481). Ms. Larraga timely filed this action on December 10, 2024. (ECF #1).

FACTUAL BACKGROUND

I.    **Personal and Vocational Evidence**

Ms. Larraga was 24 years old on her alleged onset date and 42 years old at the second hearing. (*See* Tr. 124). She has an 11th grade education, having dropped out during the 12th grade. (Tr. 364, 475). She has no past relevant work experience. (Tr. 80).

II.    **Relevant Medical Evidence**

On October 24, 2020, Ms. Larraga was examined by Pearls of Wisdom for complaints of "sadness, anxiety, auditory hallucinations, paranoia, sleep disturbance, and overeating." (Tr. 499). She described auditory and visual hallucinations at night, recurring nightmares, panic attacks, and racing thoughts. (*Id.*). A mental-status examination revealed a flat affect; anxious, gloomy, hopeless, and sad mood; mildly impaired attention and concentration; limited reasoning ability; and moderately impaired judgment. (Tr. 503). She was diagnosed with paranoid schizophrenia with active auditory hallucinations, recurrent and moderate major depressive disorder, generalized anxiety disorder, and chronic PTSD. (Tr. 506-507).

From November 2020 to August 2022, Mr. Larraga treated regularly at Pearls of Wisdom, with in-person appointments about once or twice a month. (*See* Tr. 526, 531, 537, 545, 555, 558,

2

561, 565, 570, 577, 650, 639, 627, 615, 601, 585, 659, 660, 675, 668, 681, 677, 678, 682, 683) (ordered chronologically). She was prescribed medications that were generally effective, though her prescriptions were often adjusted. (*See, e.g.*, Tr. 532, 538, 556-57, 560, 662, 675, 668, 678, 683) (ordered chronologically). Over this period, her paranoia, depression, and PTSD symptoms would wax and wane. (*See, e.g.*, Tr. 578 (elevated anxiety and paranoia in May 2021), 592-593 (PTSD worsened over May 2021), 596-97 (no depression or anxiety in September 2021 to heightened anxiety depression in October), 668 (no depression, anxiety, paranoia, or hallucinations from January 31 to March 1, 2022), 682 (paranoia returned in June 2022)).

Beginning October 2022, Ms. Larraga changed care providers to the Nord Center. (Tr. 484). At that time, her depression, sleep disturbances, anxiousness, auditory hallucinations, and persecutory delusions had returned. (*Id.*). She treated regularly at the Nord Center through April 2024 (the month before the second hearing), with telephonic appointments about monthly. (*See* Tr. 698, 708, 719, 729, 739, 750, 761, 772, 783, 818, 832, 848, 864, 885, 899, 916). Her prescriptions were adjusted initially (Tr. 489) and then remained steady, though her anxiety and sleep medications were often adjusted. (*See* Tr. 698, 715, 725, 735, 745, 756, 768, 779, 790, 825, 832, 848, 864, 893, 907, 924). During treatment, her symptoms improved, though they would wax and wane at times. (*See* Tr. 708 (no hallucinations but paranoid), 719 ("everything is going great"), 729 (paranoia improved and no hallucinations), 739 ("paranoia and psych fx's are stable and well-managed"), 750 (same), 761 (same, though PTSD returned), 772 (PTSD and anxiety worsened), 783 (PTSD and anxiety improved and no paranoia), 818 (anxiety worsened), 832 (symptoms steady), 848 (all symptoms improved), 864 (same), 885 (same), 899 (same), 916 (same)).

Starting September 2023, Ms. Larraga began one-on-one in-person counseling at the Nord Center. (Tr. 794, 797). She attended counseling every two weeks until April 2024. (*See* Tr. 794, 804, 808, 811, 815, 818, 828, 842, 845, 859, 860, 882, 896, 910, 912, 927). She missed one appointment because she forgot to set her alarm, and the appointment was rescheduled to be telephonic. (Tr. 843). Her counseling remained telephonic since (*see* Tr. 859, 860, 882, 896, 910, 912, 927), though she testified the change was for transportation issues (Tr. 61). Her counselor also noted her paranoia and anxiety symptoms would wax and wane. (*See, e.g.*, Tr. 860, 898, 912). In the most recent appointment in the record, she reported she was not afraid of her paranoid thoughts and was able to cope with them. (Tr. 929).

## III.    Relevant Opinion Evidence

On April 1, 2022, Nurse Pamela Pardon (Ms. Larraga's care provider at Pearls of Wisdom) completed a "mental impairment questionnaire" about Ms. Larraga. (Tr. 480-81). Nurse Pardon opined Ms. Larraga had "no useful ability to function" over most areas of functioning and was "seriously limited, but not precluded" in the few other areas. (*See id.*). Nurse Pardon also estimated Ms. Larraga would be absent from work several days a week because of her impairments or treatment and she would be off-task for all of a normal eight-hour workday (Tr. 481).

In February and April 2024, Nurse M. Hamilton and Nurse Sean McCreary (Ms. Larraga's care providers at the Nord Center) completed a similar questionnaire. (Tr. 684-85). They opined Ms. Larraga was either "seriously limited but not precluded" or "unable to meet competitive standards" in most areas of functioning, with a few areas where she was "unlimited or very good" or "limited but satisfactory." (*See id.*). They also opined Ms. Larraga would be absent two days a month because of her impairments or treatment. (Tr. 685).

4

On May 25, 2021, Dr. J. Joseph Konieczny, Ph.D., interviewed and evaluated Ms. Larraga as part of her disability application. (Tr. 475-78). Dr. Konieczny diagnosed Ms. Larraga with major depressive disorder that was recurrent, severe, and with anxious distress; PTSD; and generalized anxiety disorder. (Tr. 477). Dr. Konieczny lacked sufficient information to diagnose Ms. Larraga with schizophrenia. (*See id.*). He noted she claimed to suffer from paranoid schizophrenia for several years, but, in his opinion, "her description of perceived auditory and visual hallucinations did not appear to constitute true psychotic symptoms." (*Id.*). Dr. Konieczny opined Ms. Larraga had no obvious limitations in her ability to understand, remember, and carry out instructions; would have difficulty maintaining focus and persistence on mild to moderately complex multi-step tasks; would have significantly diminished ability to tolerate frustration or to respond appropriately to simple supervision or interpersonal situations in the workplace; and would have a significantly diminished ability to respond to simple pressure situations in a work setting. (Tr. 477-78).

On June 22, 2021, state agency psychological consultant Courtney Zeune, Psy.D., reviewed Ms. Larraga's medical records as part of her disability application. (Tr. 125-26). Dr. Zeune opined Ms. Larraga did not meet the criteria for Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety disorders), and 12.15 (trauma- and stressor-related disorders). (Tr. 126). Dr. Zeune opined Ms. Larraga had no limitation in understanding, remembering, or applying information but had a moderate limitation in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself. (*Id.*). On reconsideration on February 7, 2022, state agency psychological consultant Jennifer Swain reviewed updated medical records and affirmed the findings. (Tr. 132-33).

## IV.     Relevant Testimonial Evidence

Ms. Larraga explained she cannot work because of her paranoia, PTSD, and lack of focus. (Tr. 56). She constantly looks over her shoulder or out the window and feels like someone is watching her or out to get her. (*Id.*). She does not leave her house alone and has not done so for over eight years. (Tr. 57, 58). She must be accompanied when she goes out, even to grocery stores or doctor's appointments, or she will have "flashbacks" where she breaks down crying or will become intensely paranoid in public. (Tr. 57-58). Though she visits her family members regularly at their homes, she does not go out with them. (Tr. 65-66). She has been to a restaurant only once in recent memory, to celebrate her wedding. (Tr. 66). She and her husband married in 2023 in a small family ceremony at her house. (Tr. 60-61, 65). Although she and her husband make plans to eat out, her anxiety and paranoia prevent them from going, to the point they have given up planning. (Tr. 66-67).

Ms. Larraga receives counseling twice a month over the phone. (Tr. 61). Her counselors provide cognitive behavioral therapy and have been encouraging her to be more active around the house. (Tr. 63). She also is prescribed medication with irregular appointments set by her nurse practitioner about every six weeks. (Tr. 61-62). Her medication dosage is mostly stable, with only her sleep medication being changed within the last six months. (Tr. 63). She still experiences paranoia, flashbacks, and PTSD symptoms despite her medications and therapy. (*Id.*).

The VE opined a person would be precluded from competitive employment if the person needed a companion in the workplace or an isolated workstation. (Tr. 70).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any

6

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine whether a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, which is "severe," defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his or her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to prove whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine whether the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant deemed disabled. 20 C.F.R. §§ 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Ms. Larraga had not engaged in substantial gainful activity since her October 19, 2020 application. (Tr. 20). At Step Two, the ALJ identified "post-

7

traumatic stress disorder (PTSD), generalized anxiety disorder (GAD), major depressive disorder (MDD), and schizophrenia" as severe impairments. (*Id.*). At Step Three, the ALJ found Ms. Larraga's impairments did not meet the requirements of a listed impairment because she had moderate limitations in the four areas of functioning, and she had more than a minimal capacity to adapt to new changes or demands in her life. (Tr. 20-27).

At Step Four, the ALJ determined Ms. Larraga's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand, remember, and apply information to complete simple and detailed instructions; she can perform routine tasks in a low-stress environment (defined as no fast-paced, strict hourly quotas, or frequent duty changes); she can interact with the general public, coworkers, and supervisors for work tasks that do not require arbitration, negotiation, or directing the work of others; she can maintain concentration, persistence, and pace for work tasks that are routine in nature; and she can adapt to up to occasional changes in work duties.

(Tr. 27). At Step Five, the ALJ found Ms. Larraga could perform work in the national economy as a linen-room attendant, warehouse worker, or counter supply worker. (*See* Tr. 39-40). Thus, the ALJ concluded Ms. Larraga was not disabled. (Tr. 40).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial

8

evidence" is "more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F.App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Apart from considering whether substantial evidence supports the Commissioner's decision, the court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. *Walters,* 127 F.3d at 528. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); *accord Shrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.").

## DISCUSSION

Ms. Larraga argues that substantial evidence does not support the ALJ's determination at Step Three that she did not meet the Paragraph B or Paragraph C criteria of Listing 12.03 and the ALJ did not address the supportability or consistency of the medical opinion evidence at Step Four. (ECF #8 at PageID 967-82). The Commissioner responds that substantial evidence supported the ALJ's findings at Step Three and that the ALJ addressed the supportability and consistency of the medical opinions. (*See* ECF #10 at PageID 995-97, 1000-03).

I.     **At Step Three, the ALJ properly evaluated Ms. Larraga's schizophrenia under Listing 12.03 and supported the findings with substantial evidence.**

Ms. Larraga first challenges the ALJ's failure to find her disabled under Listing 12.03 (schizophrenic, paranoid, and other psychotic disorders). At the third step of the disability evaluation process, the claimant may show that her impairment meets or equals a listed impairment, in which case, she will be considered disabled. 20 C.F.R. § 416.920(d); *see also Turner v. Comm'r of Soc. Sec.*, 381 F.App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, found in 20 C.F.R. Pt. 404, Subpart P, Appendix 1, defines impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. § 416.925(a). The claimant has the burden to "point to specific evidence that demonstrates she reasonably could

10

meet or equal every requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F.App'x 426, 432 (6th Cir. 2014). The substantial-evidence standard of review applies the same to reviewing the ALJ's findings at Step Three as to findings at other steps. *See Bowman v. Comm'r of Soc. Sec.*, 683 F.App'x 367, 372-74 (6th Cir. 2017) (reviewing Step Three findings for substantial evidence).

Listing 12.03 specifies that a claimant's schizophrenia disorder must satisfy the requirements of either (i) Paragraphs A and B or (ii) Paragraphs A and C. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.03. The ALJ made no express findings for the Paragraph A criteria (instead focusing on Paragraphs B & C) and the parties do not dispute these requirements. Paragraph A requires medical documentation of either "delusions or hallucinations, disorganized thinking (speech), or grossly disorganized behavior or catatonia." *Id.* § 12.03(A). Ms. Larraga's schizophrenia diagnosis includes auditory and visual hallucinations, so Paragraph A appears to be satisfied. (*See, e.g.*, Tr. 506-07). Thus, the dispute centers around whether Ms. Larraga satisfies the criteria of Paragraph B or C.

### A.      Paragraph B Criteria

Ms. Larraga argues that the ALJ's analysis of the Paragraph B criteria was contrary to the evidence, which supported that she was more seriously limited than the ALJ determined. (*See* ECF #8 at PageID 971). Primarily, she points to the evidence that supports a finding of marked limitations, but also points to two alleged factual errors where the ALJ found Ms. Larraga does not need reminders when she forgets to attend her phone appointments and that she can independently, appropriately, and effectively maintain concentration, persistence, and pace. (ECF #8 at PageID 967-68). The Commissioner responds the ALJ provided a thorough

explanation of the Paragraph B criteria and supported the findings with substantial evidence. (*See* ECF #10 at PageID 995-97).

Paragraph B of Listing 12.03 requires Ms. Larraga have an "extreme limitation" in one of four areas of mental functioning, or "marked limitations" in two of those areas. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.03(B). The four areas of mental functioning are the abilities to (1) "understand, remember, or apply information"; (2) "interact with others"; (3) "concentrate, persist, or maintain pace"; and (4) "adapt or manage oneself." *Id.* Listing 12.00(E) further defines each area. To establish a "marked" limitation in any of these areas, the claimant's ability to function independently, appropriately, and effectively in that area must be "seriously limited." *Id.* § 12.00(F)(2)(d).

The ALJ made extensive findings under this paragraph over five pages. (Tr. 21-26). The evidence underlying Ms. Larraga's assertion is the same as that considered by the ALJ. Even if Ms. Larraga can point to substantial evidence supporting her conclusion (*i.e.*, that she is markedly limited in two areas of mental functioning), this alone does not entitle her to remand. She must show the ALJ's conclusions are not supported by substantial evidence. *Jones*, 336 F.3d at 477. To show lack of substantial evidence, Ms. Larraga must do more than "point[] to evidence of the record that supports her position." *Greene ex rel. Greene v. Astrue*, No. 1:10-cv-0414, 2010 WL 5021033, at *4 (N.D. Ohio Dec. 3, 2010). Rather, Ms. Larraga must show that "there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Id.* She cites medical evidence documenting her paranoia, anxiety, hallucinations, depression, and forgetfulness (ECF #8 at PageID 968-70). But the ALJ analyzed that evidence—alongside opinion evidence and her mental status examinations—which together showed an intact

12

memory, intact-to-mildly impaired attention, good concentration, and mostly fair insight, regular contact with her family, and out-of-state travel with her partner. (Tr. 21-26). Although substantial evidence may support Ms. Larraga's position that she has marked limitations, the Court may not reconsider or reweigh evidence already considered and weighed by the ALJ.

Ms. Larraga argues the ALJ's finding she was moderately limited in adapting and managing herself "was based on the ALJ's erroneous conclusion that Plaintiff could attend to her personal care and did not need to be reminded to go places." (ECF #8 at PageID 967). It is true Ms. Larraga missed a counseling appointment because she forgot to set her alarm. (Tr. 843). But she attended her other counseling and treatment appointments (*see, e.g.*, Tr. 859, 860, 864, 882, 885) and her psychiatric evaluation (Tr. 475).

Ms. Larraga also challenges the ALJ's analysis of the medical listing based on the reference to her daily living activities. (*See* ECF #8 at PageID 970) (citing *Lorman v. Comm'r of Soc. Sec.*, 107 F.Supp.3d 829, 838 (S.D. Ohio May 8, 2015), and *Aubin v. Comm'r of Soc. Sec.*, No. 1:20-cv-2206, 2022 WL 138080, at *12 (N.D. Ohio Jan. 14, 2022)). But the relevant issues in those cases was to the ALJ's analysis under Step Four—not Step Three, as Ms. Larraga advances here. *See Edwards v. Comm'r of Soc. Sec.*, No. 3:22-cv-597, 2023 WL 2988373, at *13 (N.D. Ohio Mar. 10, 2023) (discussing *Lorman* and *Aubin*), *report and recommendation adopted*, 2023 WL 3866333 (N.D. Ohio June 7, 2023). Additionally, while *Lorman* holds a claimant's ability to complete some daily activities *alone* may not be substantial evidence, it still recognizes those activities can show that the claimant is not as disabled as alleged. *See Lorman*, 107 F.Supp.3d at 837-38. The ALJ did that here by analyzing Ms. Larraga's claim that she could not leave her home as contrasted to other evidence showing she does leave the house—while accompanied—to visit family (Tr. 22) or to shop (Tr. 26).

Next, Ms. Larraga argues that at Step Three the ALJ did not consider the combination of her impairments. (ECF #8 at PageID 970). An ALJ analysis of a claimant's combined impairments is sufficient "where the judge referred to a combination of impairments in deciding the claimant did not meet the listings and all of the claimant's impairments were discussed individually in the decision." *Austin v. Comm'r of Soc. Sec.*, 714 F.App'x 569, 575 (6th Cir. 2018) (quotation omitted). The ALJ did precisely that, finding that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.03, 12.04, 12.06 and 12.15" (*see* Tr. 21) and then discussing Ms. Larraga's individual impairments extensively for the next five pages (*see* Tr. 21-26).

Finally, Ms. Larraga argues remand is needed because the ALJ insufficiently accounted for the waxing and waning of her paranoia and hallucinations. (ECF #8 at PageID 972-73). She argues under *Keyse v. Saul*, 1:19-cv-2495, 2021 WL 1214691, at *20 (N.D. Ohio Mar. 31, 2021), that a reviewing court cannot determine whether substantial evidence supports an ALJ's determination "where the ALJ did not consider the entire record regarding the waxing and waning of symptoms." (ECF #8 at PageID 972). She cites Dr. Konieczny's opinion, mental-status examinations, her treatment notes documenting her paranoia and auditory hallucinations. (*See id.*) (citing Tr. 476, 484, 506, 549, 571, 578, 586, 691, 701, 732, 742, 753, 764, 775, 786, 821, 835, 851, 867, 888, 902, 919). Though she cites ample evidence in support of her position, Ms. Larraga must do more than "point[] to evidence of the record that supports her position." *Greene*, 2010 WL 5021033, at *4. Moreover, the ALJ's decision considered the whole record. The ALJ relied on much of the same evidence Ms. Larraga argues was overlooked. (*See, e.g.*, Tr. 21 (citing Tr. 475-78, 739-49,

14

916-26)). It is hard to see how the ALJ failed to consider certain records when the ALJ's opinion cites those very records.

I thus decline to recommend remand on the basis that substantial evidence was lacking to support the ALJ's conclusion that Paragraph B was not met.

**B.     Paragraph C Criteria**

Ms. Larraga argues the ALJ erroneously found her daily activities, her examination findings, and the opinion evidence showed she had more than a minimal capacity to adapt to changes in her environment or new demands of daily life. (*See* ECF #8 at PageID 971-72). The Commissioner responds the ALJ's thorough explanation of the Paragraph B criteria was sufficient to support the conclusion that Ms. Larraga did not meet the Paragraph C criteria. (ECF #10 at PageID 997).

To satisfy Paragraph C, a claimant must show her mental disorder is "serious and persistent." *See* 20 C.F.R., Pt. 404, Subpt. P, App'x 1, § 12.03(C). The Listing defines a "serious and persistent" mental disorder with three criteria:

1.     Having a medically documented history of the existence of the disorder over a period of at least two years;

2.     The claimant relies upon medical treatment, mental health therapy, psychosocial supports, or highly structured settings to diminish the signs and symptoms of a mental disorder; and

3.     Despite the diminished signs and symptoms, the claimant has only achieved marginal adjustment, meaning she has only a minimal capacity to adapt to changes in her environment or new demands of daily life.

*Id.*

Ms. Larraga first cites Dr. Konieczny's opinion to show she had a "significantly diminished tolerance with a need for some degree of supervision and monitoring in the management of her

15

daily affairs." (ECF #8 at PageID 971) (citing Tr. 478). She argues this need for supervision proves a "minimal capacity to adapt to changes in her environment or new demands of daily life" required by Paragraph C. (*Id.*). But the ALJ based the determination in part on "the persuasive portions of the medical opinions" (Tr. 26) and later found Dr. Konieczny's opinion unpersuasive (Tr. 36-37). As discussed below, the ALJ properly analyzed the persuasiveness of Dr. Konieczny's opinion, so it was proper for the ALJ not to consider the opinion when analyzing the Paragraph C criteria.

Ms. Larraga next cites to *Johnson v. Comm'r of Soc. Sec.*, No. 1:18-cv-1140, 2019 WL 4417686, at *8 (N.D. Ohio Sept. 16, 2019), to argue remand is proper where "the ALJ failed to analyze a claimant's schizophrenia and marginal adjustment." (ECF #8 at PageID 971). But *Johnson* did not address Paragraph C criteria; rather the ALJ there did not analyze at all whether the claimant's schizophrenia met Listing 12.03. *See* 2019 WL 4417686, at *8. Unlike that ALJ, the ALJ here devoted over six pages to analyzing Listing 12.03. (*See* Tr. 21-27). For that same reason, Ms. Larraga's citation to other cases where the ALJ did not perform a Step Three analysis are unpersuasive. (*See* ECF #8 at PageID 973) (citing *Harris v. Comm'r of Soc. Sec.*, No. 1:18-cv-1984, 2019 WL 4991641, at *9-10 (N.D. Ohio Oct. 8, 2019) (ALJ did not analyze relevant listing at all); *Meyer v. Comm'r of Soc. Sec.*, No. 3:20-cv-921, 2021 WL 1224063, at *10 (N.D. Ohio Apr. 1, 2021) (same); *Bryson v. Comm'r of Soc. Sec.*, No. 1:20-cv-1137, 2021 WL 2735993, at *12-13 (N.D. Ohio June 10, 2021) (same), *report and recommendation adopted,* 2021 WL 2720071 (N.D. Ohio July 1, 2021)).

I thus decline to recommend remand on the basis that substantial evidence was lacking to support the ALJ's conclusion that Paragraph C was not met.

II.     **The ALJ properly evaluated the persuasiveness of the medical opinions.**

Second, Ms. Larraga challenges the ALJ's evaluation of the medical opinions of NP Pardon, Nurses Hamilton and McCreary, and Dr. Konieczny, as well as the prior administrative medical findings. (ECF #8 at PageID 977-82). Ms. Larraga argues "the ALJ failed to both support or provide any consistent evidence which supported her findings." (*Id.* at PageID 976). The Commissioner responds the ALJ evaluated each opinion for its supportability and consistency and supported those findings with substantial evidence. (ECF #10 at PageID 999).

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 416.920(e). When there is an opinion from a medical source about a claimant's capabilities, an ALJ must explain how persuasive the ALJ finds that opinion. *See* 20 C.F.R. § 416.920c(b); *see also Reeves v. Comm'r of Soc. Sec.*, 618 F.App'x 267, 275 (6th Cir. 2015). The ALJ determines the persuasiveness of a medical source's opinion following a five-factor analysis: (1) supportability; (2) consistency; (3) the source's relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) the source's specialization; and (5) any other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). Supportability and consistency are the most important factors to consider. *Id.* § 416.920c(b)(2); *see also Palmore v. Comm'r of Soc. Sec.*, No. 1:20-cv-36, 2021 WL 1169099, at *4 (S.D. Ohio Mar. 29, 2021). As a result, the ALJ's written decision must "*explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions." *See* 20 C.F.R. § 416.920c(b)(2) (emphasis added). If the ALJ discusses both of those factors and the discussion is supported by substantial evidence, the Court may not disturb the ALJ's findings. *Paradinovich v.*

17

*Comm'r of Soc. Sec.*, No. 1:20-cv-01888, 2021 WL 5994043, at *7 (N.D. Ohio Sept. 28, 2021), *report and recommendation adopted,* 2021 WL 5119354 (N.D. Ohio Nov. 4, 2021).

### A.    NP Pardon's Opinion

Ms. Larraga argues the ALJ erred by concluding the opinions from NP Pardon and Nurses Hamilton and were inconsistent with the record. (ECF #8 at PageID 978, 980). To Ms. Larraga, the ALJ's findings are "contrary to the evidence which supported and was consistent with Plaintiff's symptoms and limitations since April 2022." (*Id.*).

NP Pardon opined Ms. Larraga had "no useful ability to function" over most areas of functioning and was "seriously limited, but not precluded" in the few other areas. (*See* Tr. 480-81). As to this opinion, the ALJ found:

> The undersigned is not persuaded by the opinion of the claimant's psychiatric nurse practitioner, Pamela D. Pardon, MSN APRN CNP, dated April 1, 2022, opining that the claimant has no useful ability to function in nearly all areas of mental functioning, she would be absent from work several days a week, and she would be off task for 8 hours a day several days a week. The undersigned is not persuaded by NP Pardon's opinion because it is not supported by any objective information in the opinion itself. It also is not supported by her own examinations of the claimant. For example, the claimant had normal psychomotor activity, her examinations were generally unremarkable and her treatment notes that the claimant reported her symptoms improved. It is also inconsistent with the examination findings at the claimant's consultative examination, described above, and they are inconsistent with the claimant's examinations with her subsequent providers (*e.g.*, reports of improved anxiety, stable psychological symptoms, and ability to spend holidays with family; reports that "everything is still going well" and unremarkable examination; substantially similar examination). Because the opinion is neither supported by NP Pardon's own examinations of the claimant nor is it consistent with the other evidence of record, the undersigned finds it unpersuasive.

(Tr. 37) (citations omitted).

The ALJ applied the supportability and consistency factors by explaining NP Pardon's opinion of "no useful ability to function" was "not supported by her own examinations of the claimant" and was "inconsistent with the examination findings at the claimant's consultative

examination, described above, and they are inconsistent with the claimant's examinations with her subsequent providers." (Tr. 37). Substantial evidence supports that finding as NP Pardon's progress notes for April 2022 reported Ms. Larraga's symptoms were controlled by her medications as she denied having any symptoms of depression, anxiety, hallucinations, paranoia, or delusions. (Tr. 680-81). NP Pardon's notes for the months before and after similarly recounted Ms. Larraga denying experiencing symptoms and reporting her medication was effectively stabilizing her symptoms. (Tr. 668, 677).

Ms. Larraga argues extensively that the record actually supports NP Pardon's opinion (*see* ECF #8 at PageID 976-77). But even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. To show a lack of substantial evidence, Ms. Larraga "must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion." *Greene*, 2010 WL 5021033, at *4. A reasoning mind, viewing NP Pardon's progress notes from the time of her opinion, could accept the ALJ's conclusion that the opinion was neither supported by, nor consistent with, those notes.

### B.      Opinion of Nurses Hamilton and McCreary

Turning to the joint opinion from Nurses Hamilton and McCreary, Ms. Larraga argues the ALJ's analysis has "false statement[s] as the evidence both supported and was consistent with this opinion." (ECF #8 at PageID 980-82).

Nurses Hamilton and McCreary opined Ms. Larraga was either "seriously limited but not precluded" or "unable to meet competitive standards" in most areas of functioning, with a few areas where she was "unlimited or very good" or "limited but satisfactory." (Tr. 684-85). They also

19

opined she would be absent from work two days a month. (Tr. 685). As to this opinion, the ALJ

found:

> The undersigned is not persuaded by the opinions of the claimant's psychiatric
> nurses, M. Hamilton, R.N., and Sean McCreary, APRN-CNP, dated February 26,
> 2024, opining that the claimant has moderate limitations in understanding,
> remembering, or applying information; and either moderate or marked limitations
> in the other areas of mental functioning; and that she would be absent two days per
> month. The undersigned finds these opinions unpersuasive because only the opinion
> that the claimant has moderate limitations in understanding, remembering, or
> applying information is supported by the record, as set forth in detail in this decision.
> However, the opinion is vague insofar as it gives a range of limitations in the other
> areas of mental functioning. To the extent that the opinion suggests more than a
> moderate limitation in any area of functioning, there is no evidence of examination
> findings from Nurse Hamilton at all, and Nurse Practitioner McCreary's
> examinations do not support more than moderate limitations (*see, e.g.,* claimant's
> reports of worsening anxiety in the evenings, but well managed psychological
> symptoms otherwise and unremarkable examination; reports of spending the
> holidays with family, and the claimant having a stable mood and unremarkable
> examination; report by claimant that "everything is still going well" and
> unremarkable examination; and her examination in April of 2024, where she was
> well groomed, her speech was unremarkable, her mood was normal, her affect was
> congruent with her mood, her thought content and process were within normal
> limits, she had a good fund of knowledge, and her insight and judgment were fair).
> More significant limitations are not consistent with the other evidence of record
> outlined above and herein. Further, there is no support for the opinion that the
> claimant would be absent from work two days per month. Because balance of the
> opinion is neither supported by, nor consistent with, the other evidence of record,
> the undersigned is not persuaded by this opinion.

(Tr. 37-38) (citations omitted).

The ALJ applied the supportability and consistency factors by explaining the opinion of

Nurses Hamilton and McCreary were unpersuasive because "only the opinion that the claimant

has moderate limitations in understanding, remembering, or applying information is supported by

the record[,]" "there is no support for the opinion that the claimant would be absent from work

two days per month[,]" and "[m]ore significant limitations are not consistent with the other

evidence of record outlined above and herein." (Tr. 37). Substantial evidence supports those

20

findings because the ALJ incorporated the extensive Paragraph B findings of moderate limitations across all four areas of functioning. (*See* Tr. 21-26). Ms. Larraga points to her hearing testimony to argue the ALJ's findings are "false statement[s.]" (ECF #8 at PageID 980-82). But, once again, to show the ALJ's conclusion lacked substantial evidence, Ms. Larraga must do more than present evidence supporting the position she wishes carried the day. *Greene,* 2010 WL 5021033, at *4.

Ms. Larraga also takes issue with the ALJ's conclusion that the opinion of Nurses Hamilton and McCreary were vague. (*See* ECF #8 at PageID 980). The opinions provided by NP Pardon and Nurses Hamilton and McCreary are brief two-page forms consisting mostly of checkboxes and brief, single-sentence explanations. (*See* Tr. 480-81, 684-85). Courts have characterized a medical opinion as "weak evidence at best" where that opinion is conclusory; provides little or no supporting findings or records; or consists largely of one-word answers, circles, or checkmarks. *See Nelson v. Comm'r of Soc. Sec.,* No. 1:23-cv-1911, 2024 WL 3813539, at *10 (N.D. Ohio July 23, 2024) (collecting cases), *report and recommendation adopted,* 2024 WL 4197830 (N.D. Ohio Sept. 16, 2024). Although the opinions had checkmarks in precise categories of functioning, the explanations supporting those marks are brief and general. NP Pardon's opinion does have a 15-word discussion of Ms. Larraga's prognosis and then concludes via checkboxes that Ms. Larraga has mostly "no useful ability to function." (Tr. 480-81). Nurses Hamilton and McCreary provide even less explanation, merely checking the boxes and writing "see below" when asked to describe "the clinical findings . . . that demonstrate the severity of your patient's mental impairment and symptoms." (Tr. 684-85). The ALJ was thus correct in using "vague" to describe the lack of supporting explanation linking Ms. Larraga's condition to the functional limitations. And ALJ may properly discount opinions expressed in vague terms. *See Quisenberry v. Comm'r of Soc. Sec.,*

757 F.App'x 422, 434 (6th Cir. 2018) (holding an ALJ may properly discount an opinion that does not offer any specific functional limitations and expresses functional limitations in vague terms); *see also Gaskin v. Comm'r of Soc. Sec.*, 280 F.App'x 472, 476 (6th Cir. 2008) (finding the ALJ properly rejected a portion of an opinion as vague).

### C. Dr. Konieczny's Opinion

Ms. Larraga argues the ALJ was incorrect in finding Dr. Konieczny's examination of Ms. Larraga did not support his opinion. (ECF #8 at PageID 979). The ALJ analyzed Dr. Konieczny's opinion and found it unsupported by multiple observations from his examination of Ms. Larraga and inconsistent with other evidence of record, including the state agency psychological consultants' opinions and the examination findings in the record. (Tr. 36-37). Ms. Larraga argues this finding is wrong because Dr. Konieczny's opinion was supported by his finding that she needed supervision in her daily affairs and consistent with her psychological treatment records. (ECF #8 at PageID 979). But she does not argue the ALJ did not apply the supportability and consistency factors. Rather, she contends the ALJ interpreted the evidence wrong in applying those factors and that her own interpretation of the same evidence should prevail. But such an argument does not show a lack of substantial evidence. *Greene*, 2010 WL 5021033, at *4.

### D. The Prior Administrative Medical Findings

While discussing her other arguments, Ms. Larraga also criticizes the ALJ for finding the prior administrative medical findings persuasive while omitting from the RFC the reviewers' opined limitation to brief and superficial interactions with others without adequate explanation. (ECF #8 at PageID 982). But the ALJ found the state agency reviewers' opinions merely "*partially* persuasive." (Tr. 36) (emphasis added). And the ALJ found the exact limitation Ms. Larraga says should have been included unpersuasive: "Additionally, the opinions are vague in their use of the

22

terms 'simple unskilled work environment,' '*brief*, *superficial*,' 'responsibilities and expectations,' and 'structured and predictable work setting.' These phrases were not defined nor adequately quantified." (*Id.*) (emphasis added). The ALJ then explained "more vocationally relevant terminology" should be used to describe Ms. Larraga's mental functional limitations. (*Id.*). Looking to the ALJ's RFC, the ALJ rephrased the "brief and superficial interactions with others" as "interact with the general public, coworkers, and supervisors for work tasks that do not require arbitration, negotiation, or directing the work of others." (Tr. 27).

An ALJ may properly discount opinions expressed in vague terms. *See Quisenberry*, 757 F.App'x at 434 (holding an ALJ may properly discount an opinion that does not offer any specific functional limitations and expresses functional limitations in vague terms); *see also Gaskin*, 280 F.App'x at 476 (finding the ALJ properly rejected a portion of an opinion as vague). And an ALJ is not required to adopt a state agency psychologist's opinion verbatim or adopt the limitations wholesale. *Reeves*, 618 F.App'x at 275. Here, the reviewing psychologists never elaborated on the meaning of their terms, prompting the ALJ to delineate specific restrictions based on her understanding of what a limitation to brief, superficial contacts requires in Ms. Larraga's case. Ms. Larraga does not offer any argument that the specific restrictions are unsupported by substantial evidence, fail to account for the extent of her limitations, or are otherwise unreasonable. *See Mabry-Schlicher v. Comm'r of Soc. Sec.*, No. 24-3811, 2025 WL 1604376 (6th Cir. 2025).

Because the ALJ properly evaluated the medical opinions, I decline to recommend remand on this basis.

23

CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, I

recommend the District Court **AFFIRM** the Commissioner's decision denying supplemental

security income.

Dated: August 28, 2025

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and
Recommendation, a party may serve and file specific written objections to the
proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ.
P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted
objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or
waiver of the right to raise the issue on appeal, either to the district judge or in a
subsequent appeal to the United States Court of Appeals, depending on how or
whether the party responds to the Report and Recommendation. *Berkshire v.
Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not
merely indicate a general objection to the entirety of the Report and
Recommendation; "a general objection has the same effect as would a failure to
object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir.
1991). Objections should focus on specific concerns and not merely restate the
arguments in briefs submitted to the Magistrate Judge. "A reexamination of the
exact same argument that was presented to the Magistrate Judge without specific
objections 'wastes judicial resources rather than saving them and runs contrary to
the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-cv-186, 2018 WL
3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The
failure to assert specific objections may in rare cases be excused in the interest of
justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).